IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STATE FARM FIRE AND** | : | |
| **CASUALTY COMPANY** | : | |
| | : | CIVIL ACTION NO. 23-1703 |
| v. | : | |
| | : | |
| **JOSEPH O'BOYLE** | : | |

McHUGH, J.                                                                                                     December 13, 2023

## MEMORANDUM

In June, 2022, Defendant Joseph O'Boyle was found guilty of criminal homicide third-degree murder for the killing of Dr. James Sowa.  ECF 1 Ex. B ¶ 63.[1]  Shortly thereafter, Dr. Sowa's estate brought a survival and wrongful death action against O'Boyle based on assault and battery allegations.[2]  ECF 1 Ex. B ¶¶ 86-101.  This action by State Farm followed, seeking a declaratory judgment from this Court that it does not have a duty to continue to defend or indemnify O'Boyle for the underlying action.[3]  ECF 1.  State Farm now moves for Judgment on the Pleadings.  ECF 15.  Although the underlying complaint could be read to suggest a lack of mental capacity for purposes of negating intent, I find that State Farm's policy contains an unambiguous and applicable exclusion for criminal acts, regardless of mental capacity.  I will therefore grant State Farm's Motion.

---

[1] Plaintiff submitted several exhibits, Exhibits A through E, under the same docket exhibit entry for ECF 1, Exhibit #3.  To avoid confusion, I refer to Plaintiff's lettered exhibits.  Wherever helpful I also cite to the bates numbering found in the lower right corner of these exhibits ("SF000").  Counsel should note for all future filings, local rules require exhibits be filed separately and titled with a description on ECF.

[2] The underlying action was filed in the Philadelphia County Court of Common Pleas, captioned *Barbara Sowa, as the Administrator of the Estate of James Sowa v. Joseph O'Boyle, et al.*, Nov. Term, 2022, No. 000440.

[3] State Farm's Complaint and prayer for relief is limited to a declaration as to its duty to defend Joseph O'Boyle, not other family members who may be eligible for coverage.

I.   **Standard of Review**

In deciding a motion for judgment on the pleadings, I must "view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290-91 (3d Cir. 1988) (citations omitted). Judgment should not be granted "unless the movant clearly establishes that no material issue of fact remains to be resolved and he is entitled to judgment as a matter of law." *Id.* at 290 (citation omitted).

II.   **Background**

A.   *The Underlying Complaint*

Barbara Sowa, administrator of Dr. James Sowa, brought the underlying complaint against Joseph O'Boyle, as well as several individuals and healthcare providers who were allegedly involved in O'Boyle's custody and care. ECF 1 Ex. B ¶¶ 1-41. According to Ms. Sowa's complaint, at some point in 2020, O'Boyle began to report "jaw pain that he claimed was the result of Dr. Sowa's [chiropractic] services." ECF 1 Ex. B ¶¶ 49-50. As "O'Boyle's jaw pain allegedly worsened, so too did his hatred and ire toward Dr. Sowa." *Id.* at ¶ 51. After repeated threats about Dr. Sowa to his custodians and healthcare providers, O'Boyle ultimately "acted on his threats" on November 2, 2020, when he confronted and violently beat Dr. Sowa. *Id.* at 53, 55-56.

The underlying complaint sets forth several counts of negligence against the custodial and healthcare defendants. *Id.* ¶¶ 67-85. As to O'Boyle, however, the underlying complaint pleads only one count of assault and battery, Count V. *Id.* ¶¶ 86-91. Count V pleads:

> 87.   As a result of Defendant Joseph O'Boyle's intentional, wanton, willful, reckless, and outrageous conduct Plaintiff's decedent, during his lifetime, was caused to suffer an immediate and reasonable apprehension of a harmful or offensive contact with his body and was caused to sustain a harmful and offensive contact to his body.

> 88. As a result of Defendant Joseph O'Boyle's intentional wanton, willful, reckless and outrageous conduct in assaulting, Plaintiff's decedent, Plaintiff's decedent was caused to suffer mental anguish, emotional liability, embarrassment, fear of physical harm, and fear of imminent serious bodily injury.
>
> 89. Defendant Joseph O'Boyle intentionally initiated a violent assault and threatened bodily harm on Plaintiff's decedent, by physically assaulting and attacking him thereby violating the common law of the Commonwealth of Pennsylvania and the Restatement Second of Torts concerning the offenses of assault of battery.
>
> 90. Defendant Joseph O'Boyle intended to cause a harmful contact with the body of Plaintiff's decedent and killed him.
>
> 91. Defendant Joseph O'Boyle, in physically assaulting and attacking Plaintiff's decedent, engaged in intentional, wanton, willful, reckless and outrageous conduct, acted with deliberate malice, was grossly and outrageously negligent, acted with reckless disregard of and with deliberate, callous, and reckless indifference to the rights, interest, welfare and safety of Plaintiff's decedent, James Sowa.[4]

*Id.* ¶¶ 87-91.

In addition, the underlying complaint pleads several of O'Boyle's mental impairments and the severity of those impairments leading up to the murder of Dr. James Sowa.

> 42. As early as 2019, Defendant Joseph O'Boyle was known to be suffering from various forms of psychosis, mental illness and/or schizophrenia.
>
> 43. Due to his known mental illness and despite being an adult, Defendant Joseph O'Boyle lived with family members, who were charged with his care and custody, namely, the Custodial Defendants.
>
> 44. On at least one occasion, the Custodial Defendants voluntarily committed Defendant Joseph O'Boyle to in-patient psychiatric care at Lower Bucks Hospital.
>
> 45. Beginning in 2019 and up until all times relevant, Defendant Joseph O'Boyle, treated with numerous healthcare facilities, including Defendants Lenape Valley Foundation, Lower Bucks Hospital and Defendants Modern, for his mental illnesses.
>
> 46. These facilities provided Defendant O'Boyle with psychiatric care, including medication management to treat Defendant O'Boyle's known mental illnesses.

---

[4] Prior to listing the counts against specific defendants, the underlying complaint also pleads: "*All Defendants* breached the aforesaid duties by committing negligent acts and/or omissions as set forth more fully in the following paragraphs."  ECF 1 Ex. B ¶ 65 (emphasis added).

3

47. Despite their care, over the course of 2019 up and until November of 2020, Defendant O'Boyle's mental illnesses continued to become more severe.

48. The [custodial and healthcare defendants], were aware of the worsening of Defendant Joseph O'Boyle's mental health and deterioration of his emotional and behavioral stability.

*Id.* at ¶¶ 42-48.

B. *The State Farm Policy*

State Farm issued a homeowners' insurance policy to O'Boyle's parents, which covered O'Boyle himself because he was living with his parents at the time of the incident. *See* ECF 1 ¶¶ 10-11. The policy also covered the relevant time period of the attack on Dr. Sowa. *See id.* 21-24. The policy Personal liability coverage under the contract is described as follows:

> If a claim is made or a suit is brought against an *insured* for damages because of *bodily injury* or *property damage* to which this coverage applies, caused by an *occurrence*, *we* will:
>
> 1. pay up to *our* limit of liability for the damages for which the *insured* is legally liable. *We* will not pay for criminal restitution; and
> 2. provide a defense at *our* expense by counsel of *our* choice. *We* may make any investigation and settle any claim or suit that *we* decide is appropriate. *Our* obligation to defend any suit ends when the amount *we* pay for damages, to effect settlement or satisfy a judgment resulting from the *occurrence*, equals *our* limit of liability. *We* will not provide a defense to any *insured* for criminal prosecution or proceedings.

ECF 1 Ex. A SF00034.[5]

The policy defined "occurrence" as:

> [A]n accident, including accidental exposure to conditions, which first results in:
>   a. *bodily injury*; or
>   b. *property damage*;
> during the policy period. All *bodily injury* and *property damage* resulting from one accident, series of related accidents, or from continuous or repeated exposure to the same general conditions is considered to be one *occurrence*.

---

[5] Plaintiff's Motion, ECF 15, provides policy language slightly different from the language found in O'Boyle's policy, ECF 1 Ex. A. This memorandum relies on and cites directly to the policy at issue here, ECF 1 Ex. A.

ECF 1 Ex. A SF00015.

The policy also includes the following exclusion under Personal Liability Coverage and Medical Payments to Others Coverage:

> Coverage L and Coverage M do not apply to:
>   a. **_bodily injury_** or **_property damage_** that:
>     (1) was a result of a:
>       (a) willful and malicious; or
>       (b) criminal;
>       act or omission of the **_insured_**;
>   . . . .
>   Exclusions a.(1) . . . above apply to all **_bodily injury_** or **_property damage_** even if the:
>     . . .
>     (2) **_insured_** lacked the mental capacity to control his or her conduct[.]

ECF 1 Ex. A SF00035-36.

**III.   Discussion**

Under Pennsylvania law, an insurer has a duty to defend if the injured party's complaint comes within the policy's coverage. *Pacific Indem. Co. v. Linn*, 766 F.2d 754, 760 (3d Cir. 1985); *Frog. Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999). To determine the insurer's obligation, the court compares "the four corners of the insurance contract to the four corners of the complaint." *Erie Ins. Exch. v. Moore*, 228 A.3d 258, 265 (Pa. 2020) (citing *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 541 (Pa. 2010)). Stated differently, the court's analysis is limited to the language of the insurance policy and the factual allegations in the underlying complaint, which are "taken as true and liberally construed in favor of the insured." *State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 110 (3d Cir. 2009); *Frog, Switch, & Mfg. Co.*, 193 F.3d at 746.

Courts applying Pennsylvania law generally do not consider extrinsic evidence, or evidence outside of these four corners. *See Republic Franklin Ins. Co. v. Ebensburg Ins. Agency*, No. 21-2265, 2023 WL 3918743, at *2 (3d Cir. June 9, 2023) ("Pennsylvania's case law suggests an exacting adherence to the four corners rule."); *Kiely ex rel. Feinstein v. Phila. Contributionship Ins. Co.*, 206 A.3d 1140, 1146 (Pa. Super. Ct. 2019) (citing *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Com. Union Ins. Co.*, 908 A.2d 888, 896 (2006)) ("We do not consider extrinsic evidence.").

State Farm argues that the underlying complaint adequately alleges only intentional acts, and that any allegations of negligence on O'Boyle's part are "conclusory." ECF 15 at 9. State Farm further argues "the simple contention that an insured perpetrator suffers from mental health issues cannot negate factual allegations that describe a purposeful assault." *Id.* at 10. Mr. O'Boyle admits that the underlying complaint characterizes his conduct as intentional. ECF 18 at 3. Nonetheless, he emphasizes that the underlying complaint goes on to clearly allege that he was suffering from significant mental impairment, which would require a jury to engage in "an analysis regarding O'Boyle's intent at the time of the incident." *Id.*

I agree that Count V in the underlying complaint characterizes O'Boyle's conduct as intentional, and any reference to O'Boyle being "grossly and outrageously negligent" appears to be conclusory. *See* ECF 1 Ex. B ¶ 91; *id.* at ¶ 89 (pleading as to O'Boyle's threats and ensuing act of "intentionally initiat[ing] a violent assault"). That said, the underlying complaint also sets forth several factual allegations highlighting mental impairments so severe as to possibly negate intent, to a point where O'Boyle's actions could qualify as an accident.[6] *See IDS Prop. Cas. Ins. Co. v.*

---

[6] State Farm's Policy does not define "accident," but the Pennsylvania Supreme Court has relied on the dictionary definition: "'[a]n unexpected and undesirable event' or 'something that occurs unexpectedly or unintentionally.' The key term in the ordinary definition of 'accident' is 'unexpected.' This implies a degree of fortuity[.]" *Kvaerner Metals Div. of Kvaerner U.S., Inc.*, 908 A.2d at 898 (citing Webster's II

*Schonewolf*, 111 F. Supp. 3d 618, 626 (E.D. Pa. 2015) (finding that allegations that an underage drinker consumed alcohol even "knowing that it would cause significant impairment and lapse of judgment and control" was enough for the possibility that the impairment was so severe as to negate intent). For example, the underlying complaint alleges O'Boyle had several mental illnesses, including psychosis and schizophrenia, which had been treated with in-patient psychiatric care and medication management, but continued "to become more severe" leading up to the physical attack on Dr. Sowa. *Id.* at ¶¶ 42-47, 55, 89.

Still, even if I were to find that O'Boyle's conduct could be classified as an "accident" for purposes of policy coverage, he is unable to overcome the policy's criminal act exclusion. As described above, State Farm's policy excludes coverage for bodily injury that was a result of a criminal act of the insured. ECF 1 Ex. A SF00035-36. And this exclusion applies even if the insured "lacked the mental capacity to control his or her conduct." *Id.*

As other judges of this Court have done with similar policies, I find that the criminal act exclusion is applicable here, regardless of O'Boyle's intent. *See, e.g.*, *Allstate Ins. Co. v. Williams*, No. 13-3048, 2014 WL 4682022, at *4 (E.D. Pa. Sept. 22, 2014) (Dalzell, J.) ("The criminal acts exclusion applies based on the crimes to which the defendants pled guilty, regardless of whether [the defendant] shot [another] negligently or intentionally."); *Allstate Ins. Co. v. Wells*, No. 8-05294, 2009 WL 2137236, at *4 (E.D. Pa. July 15, 2009) (Stengel, J.) (finding intoxication was of no legal importance when the defendant committed a criminal act, and his policy contained a criminal act exclusion).

---

New College Dictionary 6 (Pa. 2001)); *Mehlman*, 589 F.3d at 111 ("Qualification of a particular incident as an accident seems to depend on two criteria: 1. the degree of foreseeability, and 2. the state of mind of the actor in intending or not intending the result.") (citation omitted).

O'Boyle argues that "granting a motion for judgment on the pleadings at this time based on the criminal acts exclusion would be premature," because "the issue of *mens rea* is still applicable and has not been resolved by a criminal conviction." ECF 18 at 5.  But the cases he cites relate to exclusions based on intentional conduct, not criminal acts.[7]  *See CSAA Affinity Ins. Co. v. Dagit*, 2021 WL 6100548, at *11 (Pa. Super. Ct. Dec. 22, 2021) (relating to an *intentional* conduct, not a criminal act, exclusion); *Erie Ins. Exch. v. Muff*, 851 A.2d 919, 927 (Pa. Super. Ct. 2004) (same).  And a criminal act exclusion is "far broader" than an exclusion for "expected or intended" injuries.  *Allstate Ins. Co. v. Woods*, No. 7-1451, 2008 WL 961240, at *4 (D.N.J. Apr. 8, 2008).  O'Boyle provides no other case law suggesting that the criminal act exclusion at issue here is inapplicable or would require further analysis into intent or state of mind where he has pleaded guilty to a criminal offense.  As such, I am constrained to hold that State Farm's criminal act exclusion bars coverage for O'Boyle, with the result that it has no duty to continue to defend or indemnify Mr. O'Boyle for the underlying action.

## IV.   Conclusion

For the reasons set forth above, Plaintiff State Farm's Motion for Judgment on the Pleadings will be granted.

/s/ Gerald Austin McHugh<br>United States District Judge

---

[7] Defendant also seeks to find support from my prior decision in *Safeco Insurance Company of Illinois v. Gasiorowski*, No. CV 20-3877, 2022 WL 2440791 (E.D. Pa. July 5, 2022), where I held that a defendant's *nolo contendere* plea did not suffice to prove he committed a criminal act and allowed for discovery.  But the issue there turned on the legal significance of a *nolo contendere* plea under Pennsylvania law.  *Id.* at *5.  Neither the underlying complaint nor the submissions in this case suggest anything other than that Mr. O'Boyle pleaded guilty to the criminal charges.